FILED

2009 Jul-07  PM 02:35
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **ISAIAH COFFEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-07-S-2169-NW** |
| | ) | |
| **CHARLIE WATKINS,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Isaiah Coffey, filed this action on November 30, 2007, against the following defendants:

> **CHARLIE WATKINS**, individually and in his capacity as Police Officer of the City of Florence, Lauderdale County, Alabama and **Bobby Irons**, individually and in his capacity as Mayor of the City of Florence, Lauderdale County, Alabama, and **Rick Singleton,** individually and in his capacity as Chief of Police of the City [of] Florence, Lauderdale County, Alabama and COUNCIL MEMBERS of the **City of Florence, Lauderdale County, Alabama** (1) **Sam Pendleton,** (2) **Scott E. Carrier**, (3) **Herman Graham**, (4) **Leland P. Howard**, (5) **James H. Barnett**, (6) **Angie Pickens,** Individually and in their capacity as Council Members Of The City of Florence, Lauderdale County, Alabama.[1]

Plaintiff asserts claims for wrongful arrest, illegal search, and excessive force, all in violation of the Fourth Amendment to the United States Constitution. He also asserts state law claims for wantonness, negligence, negligent supervision, false arrest and

---

[1]Doc. no. 1 (Complaint), at 1 (all emphasis in original).

false imprisonment, assault and battery, and negligent retention. All of these claims arise out of an incident during which defendant Charlie Watkins allegedly entered plaintiff's residence with an arrest warrant for another individual, got involved in an altercation with plaintiff, and assaulted plaintiff with a taser.

The case currently is before the court on the following motions: (1) defendants' joint motion for summary judgment on all of plaintiff's claims;[2] (2) defendants' joint motion to strike Exhibits 3 and 8 to plaintiff's evidentiary submission;[3] (3) defendants' joint motion to strike Exhibit 4 to plaintiff's evidentiary submission;[4] (4) defendants' joint motion to strike Exhibit 5 to plaintiff's evidentiary submission;[5] and (5) defendants' joint motion to strike Exhibits 9 and 10 to plaintiff's re-filed evidentiary submission.[6]

Upon consideration of these motions, the pleadings, the parties' briefs, and the evidentiary submissions, the court concludes that defendants' motion for summary judgment should be granted. The court would reach the same conclusion even if it considered all of the items of evidence addressed in defendants' motions to strike. Accordingly, the motions to strike will be denied as moot.

---

[2]Doc. no. 61.

[3]Doc. no. 69.

[4]Doc. no. 70.

[5]Doc. no. 71.

[6]Doc. no. 108.

# I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 advises that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[7]  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation."  *Daniels v. Twin Oaks Nursing Home*, 692 F.2d

---

[7] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied).

*See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

The summary judgment requirement to "review all evidence and make all reasonable inferences in favor of the party opposing summary judgment," *Chapman*, 229 F.3d at 1023, takes on even greater force when, in a case founded upon 42 U.S.C. § 1983, a governmental official files a Rule 56 motion interposing the affirmative defense of qualified immunity.  In such cases, the court *normally* must answer the legal question of whether the governmental official is entitled to qualified immunity under *the plaintiff's* version of the facts.  *See*, *e.g.*, *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider . . . this threshold question:  *Taken in the light most favorable to the party asserting the injury*, do the facts alleged show the officer's conduct violated a constitutional

right?") (emphasis supplied).

This is not the normal case, however.

Instead, there are videotape and accompanying audio recordings of the interaction between plaintiff and Officer Watkins. Consequently, where the plaintiff's version of events differs from the video and recorded audio evidence of record, the court will construe the facts as they are objectively revealed by the video and audio evidence. *See*, *e.g.*, *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Beshers v. Harrison*, 495 F.3d 1260, 1262 n.1 (11th Cir. 2007) (refusing to adopt an appellant's version of facts when reviewing a district court's order granting summary judgment in favor of the defendant police officers on the issue of qualified immunity in an excessive force case because the appellant's factual allegations were "clearly contradicted" by videotape evidence "such that no reasonable jury could believe it").

The Clerk has given the nonmoving party notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of failing to comply with the court's requirements. Therefore, the notice requirements of *Griffith v. Wainwright*, 772 F.2d

822, 825 (11th Cir. 1985) *(per curiam)*, are satisfied.  The time for filing materials in

opposition has expired, and the motion is ripe for consideration.

## II.  SUMMARY OF FACTS

The Uniform Initial Order states the following with regard to the manner of

stating facts in summary judgment briefs:

### D.    Manner of Stating Facts

All briefs submitted either in support of or opposition to a motion must begin with a statement of allegedly undisputed relevant material facts set out in *separately numbered paragraphs.*  Counsel must state facts in clear, unambiguous, simple, declarative sentences.    All statements of fact must be supported by specific reference to evidentiary submissions.

. . . .

### 2.    Opposing Party's Statement of Facts

Each party opposing a summary judgment motion also must submit a statement of facts divided as follows.

#### a.    Response to Movant's Statement

The first section must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts.  The non-moving party's response to the moving party's claimed undisputed facts shall be in *separately numbered paragraphs* that coincide with those of the moving party's claimed undisputed facts.  Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based.  *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary*

*judgment purposes unless controverted by the response of the party opposing summary judgment.*

### b.    Additional Undisputed Facts

The second section may contain additional, allegedly undisputed facts set out in *separately numbered paragraphs* that the opposing party contends require the denial of summary judgment.  The second section of the opposing party's statement of facts, if any, shall be clearly designated as such.  The opposing party should include only facts which the opposing party contends are true and not in genuine dispute.

### c.    Additional Disputed Facts

The third section may contain additional, allegedly disputed facts set out in *separately numbered paragraphs* that the opposing party contends require the denial of summary judgment.  The third section of the opposing party's statement of facts, if any, shall be clearly designated as such.  Each statement of allegedly disputed facts must be followed by specific reference to those portions of the evidentiary record which both support and contradict the alleged fact.

### 3.    Moving Party's Reply

The reply submission, if any, shall consist of only the moving party's disputes, if any, with the non-moving party's additional claimed undisputed facts.  The moving party's response to the non-moving party's additional claimed undisputed facts shall be in *separately numbered paragraphs* that coincide with those of the non-moving party's additional claimed undisputed facts.  Any statements of fact that are disputed by the moving party must be followed by a specific reference to those portions of the evidentiary record upon which the disputation is based.  *All additional material facts set forth in the statement required of the opposing parties will be deemed to be admitted for summary judgment purposes unless controverted by the statement of the movant.*[8]

---

[8]Doc. no. 15 (Uniform Initial Order), at 15-18 (emphasis in original) (footnote omitted).

The parties apparently view these clear *requirements* as mere *options*. Defendants followed the court's instructions in their initial brief in support of summary judgment, setting out each fact in a separately numbered paragraph and providing citations to the evidentiary record.[9]   Plaintiff partially followed the directions when drafting his own statements of undisputed and disputed facts, although some of plaintiff's proposed facts are not accompanied by record citations. In his response brief, however, plaintiff did not respond to any of defendants' allegedly undisputed facts.[10]   Accordingly, all facts proposed by defendant are deemed to be admitted for summary judgment purposes.  Furthermore, in their reply brief, defendants did not respond, paragraph-by-paragraph, to plaintiff's proposed undisputed and disputed facts.[11]   Accordingly, all facts proposed by plaintiff also are

---

[9]Doc. no. 62.

[10]*See* doc. no. 76.  The court notes that this was plaintiff's second attempt to comply with the Uniform Initial Order.  On October 6, 2008, plaintiff filed a brief that not only failed to address any of defendants' claimed undisputed facts, but also stated plaintiff's own proposed facts in narrative fashion, not in separately numbered paragraphs, and provided only sporadic citations to the record. Doc. no. 66.  The court struck that brief, and granted plaintiff additional time to file a brief in full compliance with the Uniform Initial Order.  *See* doc. no. 72.

[11]*See* doc. no. 111.  Defendants appear to argue that they were not required to respond to plaintiff's statement of facts because plaintiff did not respond to their statement of facts.  *See id.* at 1-2 ("The plaintiff's re-submitted statement of facts (Document 76) materially fails to comply with Appendix II [to the Uniform Initial Order (Document 15) in that its numbered paragraphs fail to coincide with defendants' statement of undisputed facts, it does not state which of defendants' claimed undisputed facts plaintiff disputes, and does not clearly set forth additional undisputed and/or disputed facts in separate sections.  Because of the failure [of] plaintiff to adhere to this Court's briefing requirements, defendants cannot reasonably comply with Appendix II's requirements regarding their reply brief because plaintiff did not appropriately divide his paragraphs or number them to coincide with defendant's statement of undisputed facts.").  While the court

deemed to be admitted for summary judgment purposes. The court realizes, of course, that many of the facts asserted by plaintiff and defendants contradict each other. The court will accept only those facts that are supported by the evidentiary record, and it will construe all discrepancies in the evidence in the light most favorable to plaintiff, the non-moving party. Proceeding accordingly, the court finds the following facts.

The Florence Municipal Court issued six Capias Warrants for the arrest of Kenneth Coffey, a relative of plaintiff Isaiah Coffey, on January 18, 2007.[12] The warrants were issued as a result of Kenneth Coffey's failure to pay fines for charges of driving without a license, operating a vehicle without insurance, windshield obstruction, attempting to elude, DUI-drugs, and theft of property in the third degree.[13] Each of the warrants had Kenneth Coffey's address listed as 426 Hensley Court, Florence, Alabama 35630 ("426 Hensley Court" or "the Hensley Court address"). One of the warrants contained the handwritten notation "good address"

---

agrees with defendants that plaintiff's statement of undisputed and disputed facts could have been more artfully drafted, it does not agree that plaintiff's brief was so bad that defendants could not fashion a reply. Further, it clearly is not the intent of the Uniform Initial Order that, if a plaintiff fails to properly respond to a defendant's statement of facts, then the defendant is relieved of its responsibility to properly respond to any undisputed or disputed facts stated by the plaintiff.

[12]*See* doc. no. 63 (defendants' evidentiary submission), at Exhibit A (Capias Warrants); *id.,* Exhibit B (Deposition of Charlie Watkins), at 22.

[13]Defendants' evidentiary submission, Exhibit A.

beside the Hensley Court address.[14]

During the morning hours of January 20, 2007, defendant Charlie Watkins, a police officer for the City of Florence, Alabama, went to 426 Hensley Court for the purpose of arresting Kenneth Coffey pursuant to the warrants issued on January 18, 2007.[15]   The City of Florence Police Department does not have a written policy regarding the proper procedures for executing arrest warrants.  Instead, officers are expected to follow legal principles they learn at the Police Academy, as well as through periodic training sessions and distribution of a monthly bulletin on developments in search and seizure jurisprudence.[16]

Officer Watkins double-checked the Hensley Court address listed on the warrants through the National Crime Information Center (NCIC) database.  The NCIC database listed 426 Hensley Court as the proper address for Kenneth Coffey.[17]  The Hensley Court address also is listed as the historical address for Kenneth Coffey from November 8, 2004 through January 1, 2008 in the Florence City Police Department's computer system.[18]  Further, the Hensley Court address is listed as

---

[14]*Id.  See also* defendants' evidentiary submission, Exhibit C (Affidavit of Charlie Watkins), at ¶¶ 4-5.

[15]Watkins Deposition, at 13-16; Watkins Affidavit, at ¶ 3.

[16]Defendant's evidentiary submission, Exhibit D (Affidavit of Rick Singleton), at ¶ 2.

[17]Watkins Affidavit, at ¶¶ 6-7.

[18]Singleton Affidavit, Exhibit 1, at document bearing Bates Stamp No. DF00058.

Kenneth Coffey's correct address on City of Florence arrest reports dated February 9, 2005, November 13, 2006, and July 30, 2007.[19]  Finally, Kenneth Coffey gave 426 Hensley Court as his address when he applied for a driver's license from the Alabama Department of Public Safety on February 11, 2002.  As of June 19, 2008, 426 Hensley Court still was listed as Kenneth Coffey's correct address on his driver's license abstract.[20]  Despite these facts, however, it is undisputed that on January 20, 2007, Kenneth Coffey was incarcerated at the Limestone County Correctional Facility, and that he did not physically reside at 426 Hensley Court.[21]

After verifying Kenneth Coffey's address through NCIC, Watkins went to the residence at 426 Hensley Court and knocked on the door.[22]  Watkins testified that he was wearing his blue police uniform with an identification badge on his left breast, identification patches on his right and left shoulders, a police-issue tool belt, and a

---

[19]Singleton Affidavit, at Exhibit 2.

[20]*See* defendant's evidentiary submission, at Exhibit E.

[21]Defendants' evidentiary submission, Exhibit G (Trial Transcript from *Florence Municipal v. Isaiah Coffee, Jr.,* Case No. MC-07-01013 in the Municipal Court of Lauderdale County, Alabama), at 26.

[22]Watkins Affidavit, at ¶ 8.  *See also* defendant's evidentiary submission, at Exhibit F (second Affidavit of Charlie Watkins), and accompanying DVD recording.  Watkins states that, "[o]n the morning of January 2007, as [he] was exiting his patrol car at or about 426 Hensley Court in Florence, Alabama, [he] activated his cruiser's video unit which in turn activates and records the audio from the microphone attached to [his] police uniform."  Second Watkins Affidavit, at ¶ 2.  He submitted a DVD which contains the video and audio footage from his encounter with plaintiff at 426 Hensley Court, and he states that both the video and audio footage are a true and accurate recording of the events that transpired.  *Id.* at ¶¶ 4-5.

police-issue radio.[23] Plaintiff acknowledged that Watkins was wearing a uniform, but testified that he could not see a badge or a shoulder patch on the uniform.  Plaintiff also testified that Watkins had a "skinhead" haircut, and that he did not identify himself as a City of Florence police officer when he knocked on plaintiff's door.  For these reasons, plaintiff questioned whether Watkins really was a police officer, and he suspected that the whole situation might be a set-up.[24]  The video footage of the incident in question is not of sufficiently clear quality to discern whether Watkins showed plaintiff his badge, or whether his shoulder patch was visible to plaintiff.

Watkins testified that Isaiah Coffey came to the door after approximately two minutes.[25]  Plaintiff testified, however, that he had heard a muffled knocking sound for approximately twenty to twenty-five minutes before answering the door.[26] Watkins asked for Kenneth Coffey, and plaintiff informed him that Kenneth was incarcerated and did not live at the residence.[27]  Watkins informed plaintiff that he had an arrest warrant for Kenneth Coffey with the 426 Hensley Court address on it,

---

[23]Watkins Affidavit, at ¶ 9.

[24]Defendants' evidentiary submission, Exhibit G (Trial Transcript from *Florence Municipal v. Isaiah Coffee, Jr.*, Case No. MC-07-01013 in the Municipal Court of Lauderdale County, Alabama), at 31, 44-45.

[25]Watkins Affidavit, at ¶ 10.

[26]Plaintiff's evidentiary submission, Exhibit 10 (Deposition of Isaiah Coffey), at 99.

[27]Watkins Affidavit, at ¶ 10.

and he asked to enter the residence to look for Kenneth Coffey.[28]  Plaintiff looked at the warrant, but he nonetheless refused to allow Watkins to enter his residence. Plaintiff explained that he had had a prior negative experience with a police officer searching his home for a suspect, because the officer had looked inside his stove, looked under a mattress, and lifted up a bowl.[29]

Watkins used his radio to call for backup and instructed plaintiff to step outside.[30]  Plaintiff refused to come outside, and instead attempted to close the door on Officer Watkins and retreat inside the residence.[31]  Watkins stopped the door with his foot and entered the threshold of the house, grabbing plaintiff's left arm as he tried to get away.[32]  Plaintiff used his right arm to grab a telephone next to the door and stated that he was going to call someone.[33]  Plaintiff did not believe that Watkins really had called for backup, because too much time had passed with no response to the call, and he wanted to verify that Watkins really was a police officer.[34]  Watkins did not know whether plaintiff intended to use the telephone receiver as a weapon,

[28]*Id.* at ¶ 11.

[29]*Id.* at ¶ 12.

[30]*Id.* at ¶ 13.

[31]*Id.* at ¶ 14.

[32]*Id.* at ¶ 15.

[33]*Id.* at ¶ 16.

[34]Defendants' evidentiary submission, Exhibit G (Trial Transcript from *Florence Municipal v. Isaiah Coffee, Jr.,* Case No. MC-07-01013 in the Municipal Court of Lauderdale County, Alabama), at 29.

to page Kenneth Coffey in another part of the house, or to call a third party to the scene to further escalate the situation.  Watkins therefore stepped back and advised plaintiff three times that he would deploy his taser if plaintiff did not put down the telephone and step outside.[35]  Plaintiff did not comply with Watkins' directives, and Watkins shot plaintiff in the left shoulder with the taser, causing plaintiff to fall to the ground.[36]  When the officers pulled the taser electrodes out of plaintiff's arm, the arm bled a little and hurt for a long time.  Even so, plaintiff did not receive any medical treatment for the wounds.[37]

After additional officers arrived on the scene and searched the residence, it was determined that Kenneth Coffey was not inside.  Plaintiff was charged with obstructing governmental operations and resisting arrest, and he was transported to jail.[38]  Watkins and another officer pushed plaintiff's hands together behind his back in order to handcuff him and place him in the police car.  Plaintiff testified that those movements hurt his right shoulder.[39]  On June 7, 2007, the Florence Municipal Court acquitted plaintiff on the charge of resisting arrest, and found him guilty on the

---

[35]Watkins Affidavit, at ¶ 17.

[36]*Id.* at ¶ 18.

[37]Defendants' evidentiary submission, Exhibit G (Trial Transcript from *Florence Municipal v. Isaiah Coffee, Jr.,* Case No. MC-07-01013 in the Municipal Court of Lauderdale County, Alabama), at 48.

[38]Watkins Deposition, at 29-30; Watkins Affidavit, at ¶ 20.

[39]Plaintiff's evidentiary submission, Exhibit 10 (Deposition of Isaiah Coffey), at 149.

charge of obstructing government operations.[40]   Plaintiff did not appeal this conviction.

The City of Florence Police Department has a "Taser Use Policy," which states that

> [o]fficers certified in the use of the taser may use it to subdue persons who resist arrest, combative [sic], fleeing to avoid arrest, mental persons who are a danger to themselves or others, or to deter a violent situation before it occurs.  Taser may be used in any situations that you would also use OC spray.[41]

The Florence Police Department also has a "Taser Use Standard Operating Procedure" policy, which sates:

1.    Any officer using Taser must be a certified Taser user.

2.    Taser may be used to subdue persons who resist arrest, combative, fleeing to avoid arrest, mental persons who are a danger to themselves or others, or to deter a violent situation before it occurs.  Taser may be used in any situations that you would also use OC spray.

3.    Before the officer with Taser shoots, he is to say loudly, "TASER" to prepare all officers on scene that Taser is being deployed.

4.    After Taser is deployed on a subject, the Taser officer is to notify dispatch by saying, "Taser Deployed."  This is so dispatch can record time of deployment.

---

[40]*See* defendants' evidentiary submission, Exhibit G (Trial Transcript from *Florence Municipal v. Isaiah Coffee, Jr.,* Case No. MC-07-01013 in the Municipal Court of Lauderdale County, Alabama); Exhibit H (Records from the Florence Municipal Court).

[41]Florence Police Department Taser Use Policy, Exhibit 3 to Singleton Affidavit.

5.      The Taser officer is the responsible officer for removing the Taser darts from subject.  After removal, the officer must inspect dart entry area and rub down with alcohol swab.  Use rubber gloves for safety.

6.      If the darts enter a soft tissue (breasts, genitals, face, or head) the subject must be taken to ECM ER to be removed by an ER doctor.

7.      After a Taser use incident a Taser use form must be filled out.  A copy of this form and all I/O's and Arrest reports and any other forms must be sent to the Chief and a copy to the Taser instructor (John Hamm) for record keeping.

8.      When Taser is deployed on a suspect and probes penetrate suspect's skin, pictures are to be taken of the entry site and logged.  If probes do not enter skin, only clothing, no pictures are necessary.[42]

Watkins was certified in use of the taser at the time of the incident made the basis of this suit.[43]

## III.  DISCUSSION

At the summary judgment stage, plaintiff has effectively abandoned all claims other than his Fourth Amendment excessive force claim against Watkins.[44]  Watkins

---

[42]Florence Police Department Taser Use Standard Operating Procedure, Exhibit 4 to Singleton Affidavit.

[43]Watkins Affidavit, at ¶ 19.

[44]Plaintiff offered no response to defendants' well-supported arguments that summary judgment should be granted on his other claims.  Issues and contentions not raised in a party's brief are deemed abandoned.  *See, e.g.*, *Chapman*, 229 F.3d at 1027 ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards.").  *Cf. Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground

argues that he is entitled to the protection of qualified immunity from suit on that claim against him in his individual capacity.

The doctrine of qualified immunity protects governmental officials who are sued under 42 U.S.C. § 1983 for money damages in their personal, or individual, capacities, but only so long as "their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts generally apply a two-part test for

---

for summary judgment") (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)).

> In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him. There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. . . .

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations and internal quotation marks omitted).

Plaintiff does state, without citing any supporting authority, that "the arrest of the plaintiff Coffey was illegal, steming [sic] from Officer Watkins [sic] attempt to cover up the illegal arrest and **tasing**." Doc. no. 76 (plaintiff's brief), at 23 (emphasis in original). This conclusory argument is not sufficient to refute defendants' argument that summary judgment should be granted on plaintiff's illegal arrest claim. The court will not give consideration to arguments that are not fully developed or bolstered with legal authority. *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a party's "perfunctory and underdeveloped argument") (citing *Flanigan's Enterprises, Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that "fail[ure] to elaborate or provide any citation of authority in support [of an argument]" results in waiver)). *See also Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997) (explaining that "the onus is upon the parties to formulate arguments"; *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it").

-17-

evaluating whether a defendant is entitled to qualified immunity. The "threshold question" that must be asked by the district court is whether the facts, viewed "in the light most favorable to the party asserting the injury," show that "the officer's conduct violated a constitutional right?" *Saucier,* 533 U.S. at 201.[45] If the threshold question is answered positively, the court will proceed to analyze the second aspect of the two-part inquiry: *i.e.,* "whether the right was clearly established." *Id.*[46]

Plaintiff claims that Watkins violated his Fourth Amendment right to be free from the excessive use of force both when he deployed the taser, and when he handcuffed plaintiff and placed him in the police car during his arrest. "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing *Graham v. Connor*, 490 U.S.

---

[45]The defendant claiming immunity must also "prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). Here, it is uncontested that Watkins was acting within his discretionary authority at the time of the events leading to plaintiff's claims. *See* doc. no. 76 (plaintiff's brief), at 20 ("The decision to use force is clearly discretionary authority within the mind and thought pattern of the police officer that made use of the force.").

[46]The Supreme Court recently relieved lower courts from mandatory adherence to the order of the two-part analysis articulated in *Saucier*. *See Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 818 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."). It is now within this court's discretion to, in appropriate cases, assume that a constitutional violation occurred for the purpose of addressing, in the first instance, whether such a violation would be "clearly established." *Id.* That said, and under the circumstances of the present case, the tested sequence of analysis of *Saucier* will be followed.

386, 394-95 (1989)).  The reasonableness inquiry is an objective one:  "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham,* 490 U.S. at 397 (citations omitted).  In other words, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."  *Id.* (citations omitted).

The court may consider a number of factors when determining whether the force applied was "reasonable" under the circumstances, including:  (1) the "severity, or lack of severity, of the alleged crime in issue," *id.* at 396; (2) "whether the person against whom the force was used posed an immediate threat to the safety of the police or others," *id.*; (3) "the need for the application of force," *Jackson v. Sauls*, 206 F.3d 1156, 1170 n.18 (11th Cir. 2000); (4) "the relationship between the need and the amount of force used," *id.*; (5) "the extent of the injury inflicted," *id.*; (6) "whether the force was applied in good faith or maliciously and sadistically," *id.*; (7) "the possibility that the persons subject to the police action are themselves violent or dangerous," *id.*; (8) "the possibility that the suspect may be armed," *id.*; (9) "the number of persons with whom the police officers must contend at one time," *id.*; and (10) "whether the suspect was resisting or fleeing."  *Id.*

The reasonableness of the force applied also is measured as of the precise moment it is used; events that occurred before that moment, though perhaps giving factual context to the use of force, are not probative of the reasonableness of the decision to use force. *See Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991). Additionally, "[u]se of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting *Graham*, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

The evidence in this case, even when construed in the light most favorable to plaintiff, demonstrates that Watkins' use of the taser was objectively reasonable in light of all of the circumstances. There is no dispute that Watkins was attempting to execute a lawful arrest warrant, and that plaintiff refused to allow Watkins inside his home for that purpose. Plaintiff disobeyed Watkins' requests to step outside and to put down the telephone receiver, and he attempted to retreat inside the house and away from Watkins. A jury could conclude that Watkins reasonably perceived

plaintiff's behavior to be threatening, especially considering that plaintiff disobeyed direct orders and obtained an object that could be used either as a weapon, or as a means of communication that would further escalate the situation.  The amount of force Watkins used — *i.e.,* the one-time use of his taser — was reasonably calculated to contain the threat Watkins perceived, but to not cause excessive injury to plaintiff.  Indeed, plaintiff suffered only minimal injuries, including lacerations on his skin; he did not suffer any permanent damage or require medical treatment.  Finally, there is no evidence that Watkins used the taser in bad faith, maliciously, or sadistically.  To the contrary, the audio footage of the incident clearly reveals that Watkins warned plaintiff several times before deploying the taser, and he even implored plaintiff not to escalate the situation such that use of the taser would be required.  Based on all of these factors, the level of force Watkins used cannot be said to have been "excessive" under the Fourth Amendment.

Plaintiff has cited no authority to support a different conclusion.[47]  Indeed, even the most factually similar case plaintiff cites is easily distinguishable.  In *Lee v. Ferraro,* 284 F.3d 1188 (11th Cir. 2002), Kim Lee was pulled over by an officer for

---

[47]In fact, some of the cases cited by plaintiff no longer are good law in the Eleventh Circuit, and others do not even address Fourth Amendment excessive force claims.  *See, e.g., Harris v. Coweta County,* 406 F.3d 1307 (11th Cir. 2005), *rev'd, Scott v. Harris,* 550 U.S. 372 (2007); *Manders v. Lee,* 285 F.3d 983 (11th Cir. 2002) (holding that a sheriff in his official capacity is an agent of the state when performing his law enforcement duties regarding use of force and is therefore entitled to Eleventh Amendment immunity), *vacated by* 338 F.3d 1304 (11th Cir. 2003).

honking her horn in traffic.  The officer cursed Lee, opened her car door, and pointed his night stick in her face.  The officer then grabbed Lee's wrist, pulled her out of the car, and shoved her hand against her back.  He told Lee she was under arrest, shoved her against the car, put her hand on the hood of the car, frisked her and handcuffed her.  *After* Lee was handcuffed, and without any resistance from Lee, the officer led Lee to the trunk of her car, slammed her head down onto the trunk, and kept spreading her legs with his foot.  *Id.* at 1190-91.

Lee sued the officer for Fourth Amendment excessive force violations, and the Eleventh Circuit held that the evidence supported a claim for excessive force.  The court weighed the following factors heavily in finding excessive force:  *i.e.,* that Lee's crime (honking her horn) was relatively insignificant; that Lee did not pose any threat to the officer or to anyone else; that Lee did not resist arrest or attempt to flee; and that Lee had already been secured in handcuffs when the officer slammed her head against the trunk of the car.  *Id.* at 1198.  In short, the Eleventh Circuit stated that it was "abundantly clear" from the evidence that the officer "used force that was plainly excessive, wholly unnecessary, and, indeed, grossly disproportionate."  *Id.* at 1198.

In the present case, in contrast, the level of force Watkins used was less severe, more proportionate to the severity of plaintiff's offense, and linked directly to Watkins' efforts to subdue plaintiff and prevent the situation from further escalating.

Further, there is evidence that plaintiff resisted Watkins' efforts to execute the arrest warrant, disobeyed Watkins' directives, and attempted to escape from Watkins. Thus, the *Lee* decision is distinguishable and does not mandate a finding of excessive force.

In other decisions with more similar fact patterns, the Eleventh Circuit has declined to find excessive force. For example, in *Draper v. Reynolds,* 369 F.3d 1270 (11th Cir. 2004), the Eleventh Circuit held that a police officer effecting a traffic stop did not violate Draper's Fourth Amendment right to be free from excessive force when he shot Draper in the chest with a taser gun, because the use of the taser gun "was reasonably proportionate to the difficult, tense and uncertain situation" the officer faced. *Id.* at 1278. The Court noted that Draper had been "hostile, belligerent, and uncooperative" with the officer, and that he had disobeyed at least five direct requests from the officer. *Id.* The Court also stated that, "[a]lthough being struck by a taser gun is an unpleasant experience, the amount of force [the officer] used — a single use of the taser gun causing a one-time shocking — was reasonably proportionate to the need for force and did not inflict any serious injury." *Id.* Based on these factors, as well as the acknowledgement that the "single use of the taser gun may well have prevented a physical struggle and serious harm to either Draper or" the officer, the Eleventh Circuit concluded that the "totality of the circumstances" did not support a finding of excessive force. *Id.*

The Eleventh Circuit reached a similar conclusion even more recently in an unpublished opinion.  In *Buckley v. Haddock,* 292 Fed. Appx. 791 (11th Cir. 2008), a police officer tased Buckley after Buckley refused to sign a traffic citation, disobeyed the officer's orders to stand up and out of the highway, and ignored the officer's repeated warnings that the taser would be used if he did not comply.  *Id.* at 792-93.  The Eleventh Circuit concluded that these facts did not support a finding of excessive force, considering that the officer was only attempting to control Buckley and prevent harm to him and other motorists, and that the officer repeatedly warned Buckley that the taser would be used if he did not comply with the officer's directives.  *Id.* at 794.  The Court also noted that Buckley did not suffer any serious injuries that required medical attention.  *Id.* at 795.  Because the case was "not one where a compliant arrestee was abused for no good reason," the Court found that the officer had not used excessive force.  *Id.* at 796 (distinguishing *Hadley v. Gutierrez,* 526 F.3d 1324 (11th Cir. 2008)).  The Eleventh Circuit also distinguished *Lee v. Ferraro* as follows:

> We regard *Lee* as easily distinguishable from the facts and circumstances of this case.  At best, *Lee* decides only that no officer can use force against an arrestee who is already handcuffed and who is resisting arrest in no way.  But unlike *Lee*, where the court stressed that the arrestee did not resist at any time during the arrest, here Plaintiff did resist; for example, he physically dropped to the ground, repeatedly refused to comply with the deputy's reasonable orders (even after being

warned that a taser would be used), and made no effort to stand when the deputy attempted on two occasions physically to lift Plaintiff to his feet.

*Id.* at 798 (footnote omitted).

Based on the foregoing authority, this court concludes that Watkins' use of the taser did not constitute excessive force in violation of the Fourth Amendment.

The evidence also does not support a claim for excessive force based upon injuries to plaintiff's shoulder during his arrest.[48]  Plaintiff testified that his right shoulder was hurt when Watkins and another officer pushed his hands together behind his back in order to handcuff him and place him in the police car.[49]  However, plaintiff has produced no evidence that the officers' actions were not reasonably necessary to their efforts to secure plaintiff for arrest, that the officers acted maliciously or in bad faith, or that plaintiff suffered any serious injury from the incident.  Plaintiff did offer the testimony of his doctor, Aaron E. Joiner, Jr., to show that, on November 12, 2007 (ten months after the incident occurred), he suffered from tendinitis in his rotator cuff tendon and a possible tear of the tendon.[50]  Even so, there

---

[48]The court notes that it is questionable whether plaintiff has even asserted a claim for excessive force based upon his handcuffing and placement in the police car.  In his complaint, plaintiff did not mention any injury incurred as a result of the handcuffing.  The complaint only mentions the injuries plaintiff allegedly suffered from being tased.  Even if plaintiff did state such a claim, however, there is no evidence to support it, as set forth above.

[49]Plaintiff's evidentiary submission, Exhibit 10 (Deposition of Isaiah Coffey), at 149.

[50]Plaintiff's evidentiary submission, Exhibit 4 (Deposition of Aaron E. Joiner, Jr.), at 13.

is no *admissible* evidence to connect these injuries to plaintiff's handcuffing and placement in the police car.  Plaintiff offers only his own conjecture that the incident and injuries are linked, as well as Dr. Joiner's hearsay testimony that plaintiff *told* him the injuries were caused by the officers' actions.  This is insufficient to support any claim of excessive force based upon an injury to plaintiff's shoulder from the handcuffing.  *See Zivojinovich v. Barner,* 525 F.3d 1059, 1073 (11th Cir. 2008) ("[U]sing an uncomfortable hold to escort an uncooperative and potentially belligerent suspect is not unreasonable"); *Rodriguez v. Farrell,* 280 F.3d 1341, 1352 (11th Cir. 2002) ("Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal.") (citations omitted).[51]

Because the evidence does not support a claim for excessive force based upon either the tasing or the handcuffing of plaintiff, the court need not proceed to the next stage of the qualified immunity analysis, *i.e.,* whether Watkins violated clearly established law.  *See Zivojinovich,* 525 F.3d at 1072-73 ("Because we conclude that there was no Fourth Amendment violation, we need not address the second prong of

---

[51]The only case cited by plaintiff to support an excessive force claim based upon force applied during handcuffing is distinguishable.  In *Smith v. Mattox,* 127 F.3d 1416 (11th Cir. 1997), the Eleventh Circuit found that an officer was not protected by qualified immunity from an excessive force claim when he broke an already-subdued arrestee's arm while uttering a grunt and delivering a hard blow.  *Id.* at 1418-20.  The level of force used and the injury imposed in *Smith* were significantly greater than that involved in the present case.

the qualified immunity analysis.").[52]

## IV.  CONCLUSION AND ORDER

In accordance with the foregoing, defendants' motion for summary judgment is GRANTED.  All of defendants' motions to strike are DENIED as moot.  All of plaintiff's claims are DISMISSED with prejudice.  Costs are taxed to plaintiff.  The Clerk of Court is directed to close this file.

DONE this 7th day of July, 2009.

_____
UNITED STATES DISTRICT JUDGE
SITTING BY DESIGNATION

---

[52]Furthermore, because the evidence does not support a Fourth Amendment claim for excessive force, summary judgment also is due to be granted on plaintiff's claim against Watkins in his official capacity.